**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

REMBRANDT VISION TECHNOLOGIES, L.P.,

                   Plaintiff,

vs.                                        Case No. 3:11-cv-819-J-32-JRK

JOHNSON & JOHNSON VISION CARE, INC.,

                   Defendant.

_____

## ORDER

       Following a more than two-week trial in this contentious and expensive patent case, the jury found for Defendant. During trial, one of Plaintiff's experts gave contradictory testimony, causing the Court to disallow it, a ruling which has now been affirmed on appeal. Post-trial it was found that one of Defendant's expert witnesses also likely gave false trial testimony. How should the Court decide Plaintiff's Rule 60 motion seeking a new trial?

       Plaintiff, Rembrandt Vision Technologies, L.P. ("Rembrandt"), asks the Court to order a new trial under Federal Rules of Civil Procedure 60(b)(2) and 60(b)(3) because of the alleged perjury of one of the expert witnesses for Defendant, Johnson & Johnson Vision Care, Inc. ("JJVC"), Dr. Christopher Bielawski. (Doc. 345 at 5-6).[1] The Court has considered

---

[1] Rembrandt alternatively argues that it was not provided with the data and graphs from JJVC's testing on infringing Bausch & Lomb and CIBA lenses, and from undisclosed tests on the accused contact lenses, and therefore that it is entitled to relief under Rules 60(b)(3) and 60(b)(2). (Doc. 345 at 24). To receive relief under Rule 60(b)(3), Rembrandt must demonstrate that it was prevented from fully and fairly presenting its case. Rembrandt's assertion, which is murky at best, does not present such a scenario. See Hirsch v. Nova Se. Univ., Inc., 289 F. App'x 364, 368 (11th Cir. 2008). Nor can Rembrandt demonstrate, as it must to succeed under Rule 60(b)(2), that a new trial with this evidence would probably produce a different result.

the voluminous filings, including Plaintiff's Motion to Set Aside the Judgment (Doc. 345), Defendant's Response (Doc. 346), Plaintiff's Reply (Doc. 357), the various supplementary filings (Doc. 347, 348, 367, 377), Defendant's Notice of New Authority (Doc. 370) and Plaintiff's Response (Doc. 372), as well as the parties' statements regarding the effect of the Federal Circuit's mandate (Doc. 379, 380) and updates regarding Dr. Bielawski's status (Doc. 389, 390, 391, 392). The Court also heard extensive oral argument on August 2, 2013 (Doc. 373), the record of which is incorporated by reference.[2]

## I.    The Effect of the Federal Circuit's Decision on the Rule 60 Motion

After the jury ruled in JJVC's favor, Rembrandt filed a post-trial motion to reopen the case and compel discovery, questioning the veracity of the trial testimony of Dr. Bielawski. (Doc. 305). JJVC opposed the request (Doc. 308), and the Court denied the motion (Doc. 318). Thereafter, Rembrandt appealed the final judgment, which the Court entered in JJVC's favor in accordance with the jury's verdict and the Court's alternative ruling granting JJVC's Rule 50 motion based on the defective trial testimony of one of Rembrandt's experts, Dr. Thomas Beebe. (Doc. 317). Although one of the grounds on appeal was this Court's denial of Rembrandt's motion to reopen discovery, the Federal Circuit did not reach that issue. Rembrandt Vision Technologies, L.P. v. Johnson & Johnson Vision Care, Inc., 725 F.3d 1377, 1380 n.1 (Fed. Cir. 2013). Rather, in affirming, the Federal Circuit only addressed the Court's Rule 50 Order granting judgment as a matter of law based on the defects in Dr.

---

[2] The reader is encouraged to consider the transcript of the three-hour August 2, 2013 hearing, in which counsel and the Court engaged in extensive discussions on this motion. (Doc. 373).

Beebe's testimony. Id.

The Court delayed ruling on this Rule 60 motion while the case was in the Federal Circuit. After the Federal Circuit mandate issued, the Court asked the parties what effect, if any, that mandate had on this Court's consideration of the Rule 60 motion. (Doc. 378). Rembrandt, in essence, says the Federal Circuit decision has no effect and the Court should proceed on the merits. (Doc. 379). For a variety of reasons, but primarily because JJVC views the Federal Circuit affirmance as being on an independent ground that renders the Rule 60 motion moot, JJVC says the Federal Circuit's mandate, in and of itself, requires denial of the Rule 60 motion. (Doc. 380).

While JJVC's arguments have force, the Court is not convinced the Federal Circuit's decision forecloses merits consideration of Rembrandt's Rule 60 motion. If JJVC's arguments on this score prove to be correct, the Court presumes that on appeal the Federal Circuit will so instruct and decline to reach the merits of the Rule 60 motion. In the meantime, this Court will address the merits.[3]

## II.    Dr. Bielawski's Testimony

For the purposes of this motion, the Court assumes without deciding that Dr. Bielawski testified falsely when he said that he personally performed XPS and TOF-SIMS tests, and about his qualifications as an expert in performing those tests. In fact, even JJVC now agrees that there is clear and convincing evidence that Dr. Bielawski gave false

---

[3]  With 20-20 hindsight, this Court's denial of Rembrandt's post-verdict, but pre-appeal request for discovery to investigate this issue now seems ill-advised.

3

testimony. (Doc. 380 at 18).[4]

This was a serious and detrimental occurrence. It insulted the jury, violated the integrity of the judicial process, and interfered with the search for the truth that is the hallmark of our trial-by-jury system. Moreover, this false testimony was given in a highly contested patent case in which an expert for Rembrandt, Dr. Beebe, radically changed his expert testimony during the middle of his examination. As a result, the Court struck his testimony and entered an alternative Rule 50 judgment against Rembrandt because it was unable to prove a required element of its case without Dr. Beebe's testimony. (Doc. 317). Now, having learned post-trial that JJVC's expert likely lied on the stand, arguably committing an act at least as egregious as Dr. Beebe's, it is a fair question to ask whether Rembrandt should be entitled to a new trial.

However, that Dr. Bielawski testified falsely does not end the inquiry. In deciding what to do, the Court must be guided by the Federal Rules, which make it difficult to upset a jury's verdict even if misconduct is shown. Thus, the Court turns to Rule 60 and looks at each of the sections cited by Rembrandt to determine whether a new trial is required. (Doc. 345 at 10-11).

### A.    Rule 60(b)(2)

"For the court to grant relief based upon newly discovered evidence under Rule

---

[4] Because Dr. Bielawski has not been given an opportunity to tell his side of the story and because there are potential personal ramifications for him if he is found to have lied under oath, the Court does not make a judicial finding that he testified falsely. But, since both parties now agree that he did testify falsely, the Court will assume arguendo that he did for purposes of deciding the Rule 60 motion.

4

60(b)(2), a movant must meet a five-part test: (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result." Waddell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003); see also Scutieri v. Paige, 808 F.2d 785, 793 (11th Cir. 1987).[5] Since Rule 60(b)(2) relief is an extraordinary remedy, these requirements must be strictly met. Id. Without the need for further discussion, Rembrandt meets grounds 1 and 2.

Rembrandt asks this Court to set aside the judgment based on the newly discovered evidence that Dr. Bielawski lied about his qualifications and about performing tests. It is a very serious thing for a witness to lie from the stand. It can, in some cases bring criminal penalties for perjury. There is heightened concern here because Dr. Bielawski was a retained expert, solicited and sponsored by JJVC in a patent case in which expert testimony was critical.

Further, the matter that he lied about was material to his testimony. As Dr. Bielawski was testifying about the results of the tests and how they were important to his opinions, whether he personally conducted them was an obviously relevant and material factor.

Regardless of the seriousness of Dr. Bielawski's offense, however, Rembrandt still must demonstrate that a new trial would probably produce a different result. Upon sober

---

[5] In reviewing decisions on Rule 60 motions, the Federal Circuit applies the law of the circuit in which the district court sits so long as the ruling does not turn on substantive issues unique to patent law. Lazare Kaplan Int'l, Inc. v. Photoscribe Technologies, Inc., 714 F.3d 1289, 1292-93 (Fed. Cir. 2013).

5

reflection, I conclude it cannot do so. First, Rembrandt's lost opportunity to impeach Dr. Bielawski with evidence of his false testimony does not lead to Rule 60(b)(2) relief. See Waddell, 329 F.3d at 1309 (noting that newly discovered evidence must be more than merely cumulative or impeaching to warrant 60(b)(2) relief). Second, while there is no way for the Court to recount the whole of the evidence adduced at trial, there was strong evidence to support JJVC's non-infringement case, independent of Dr. Bielawski's testimony.[6] Having carefully followed the evidence at trial, the Court was unsurprised by the jury's verdict of non-infringement.

**B.      Rule 60(b)(3)**

Rule 60(b)(3) provides that the court may relieve a party from a final judgment because of fraud, misrepresentation, or misconduct "by an opposing party". FED. R. CIV. P. 60(b)(3). The movant must prove by clear and convincing evidence both that the adverse party obtained the verdict through fraud, misrepresentation, or misconduct and that the fraud prevented the movant from fully and fairly presenting its case. Cox Nuclear Pharmacy, Inc. v. CTI, Inc., 478 F.3d 1303, 1314 (11th Cir. 2007).

Rembrandt chiefly relies on a case in which 60(b)(3) relief was granted on the basis of an expert witness' perjury, Harre v. A.H. Robins Co., Inc., 750 F.2d 1501 (11th Cir. 1985).

_____

[6] For example, on the "surface layer" issue as to which Dr. Bielawski testified, the project lead for Acuvue Advance testified that Acuvue Advance and Oasys did not have a surface layer. (Doc. 299 at 39-40). The staff scientist who helped create the lens testified to its creation without a surface layer. (Doc. 298 at 245-46). Additionally, the vice president of contact lens research and development for Vistakon in Jacksonville testified to the development of the non-coated (no surface layer) contact lens. (Doc. 297 at 246). These are but a few pieces of JJVC's case, which also contained expert testimony from sources other than Dr. Bielawski.

In <u>Harre</u>, the primary issue at trial related to whether an IUD allowed wicking, which is a process leading to uterine infections. <u>Harre</u>, 750 F.2d at 1502. Defendant presented only one expert witness who claimed to have conducted or directed wicking studies, Dr. Keith. <u>Id.</u> at 1505. After trial, it became apparent that Dr. Keith had never done any wicking experiments. <u>Id.</u> at 1503. As Dr. Keith had been an expert for defendant for years, and defense counsel must have become aware of the perjurious testimony, the court found that the attorneys were complicit in the misconduct. <u>Id.</u> at 1505.

> We find that the record supports Appellants' argument that a material expert witness testified falsely on the ultimate issue in the case, where the defense attorneys knew or should have known of the falsity of the testimony. . . . This court is deeply disturbed by the fact that a material expert witness, with complicity of counsel, would falsely testify on the ultimate issue of causation. Therefore, we hold that the district court abused its discretion in denying Appellants' Rule 60(b)(3) motion. Accordingly, we REVERSE and REMAND for a new trial.

> <u>Id.</u> at 1503, 1505.

Though <u>Harre</u> bears similarities to this case, it is ultimately distinguishable. First, Dr. Bielawski's testimony was not nearly as central or necessary to this case as that of Dr. Keith in <u>Harre</u>. Second, this case does not involve the complicity of "the opposing party" (JJVC) or its counsel. While the <u>Harre</u> court did not expressly limit its holding to circumstances in which counsel is complicit with witness misconduct, it was obviously important to the court's decision. Indeed, at least one court has distinguished <u>Harre</u> on the grounds that it involved a scenario where counsel knew or should have known about the expert's perjury. <u>See</u> <u>Richardson v. Nat'l R.R. Passenger Corp.</u>, 49 F.3d 760, 765 n.3 (D.C. Cir. 1995). In <u>Richardson</u>, where there was no claim that counsel knew, the court

7

affirmed denial of Rule 60(b)(3) relief even though an expert witness perjured himself because that expert's testimony was not equivalent to the party's own testimony. Id.

A number of other courts have likewise interpreted the plain language of Rule 60(b)(3) to require the opposing party or its counsel to have engaged in the fraud, misrepresentation, or misconduct. See, e.g., Metlyn Realty Corp. v. Esmark, Inc., 763 F.2d 826, 832 (7th Cir. 1985) (affirming denial of Rule 60(b)(3) relief because neither the party nor its counsel knew of the falsity of their expert witness' statements); Bethel v. McAllister Bros., Inc., CIV.A. 91-2032, 1994 WL 328350, at *3 (E.D. Pa. July 11, 1994) (noting that, to obtain Rule 60(b)(3) relief, "the moving party must show that [the] fraud is attributable to the party or, at least, to counsel"); Harris v. Mapp, 719 F. Supp. 1317, 1324 (E.D. Va. 1989) (holding that a 60(b)(3) "movant must [] prove that the misconduct complained of is traceable to an adverse party"); see also Jordan v. Paccar, Inc., No. 95-3478, 1996 WL 528950, at *7 (6th Cir. Sept. 17, 1996) (stating that the plain language of Rule 60(b)(3) requires "some odious behavior on the part of the non-moving party"). The Court has canvassed Eleventh Circuit authority on Rule 60 and found no decisions which indicate that the Eleventh Circuit would rule differently on this point.

Rembrandt contends that 60(b)(3) relief is available even if the misconduct is not attributable to the opposing party. (Doc. 345 at 21).  The only case it cites which supports this assertion is In re Vioxx Products, 489 F. Supp. 2d 587 (E.D. La. 2007), in which the court granted Rule 60(b)(3) relief where, unbeknownst to counsel, a central expert witness lied about whether he was board-certified. Vioxx, 489 F. Supp. 2d at 594-95. Vioxx, however, contradicts the majority of the case law on the topic, as well as the plain

8

language of the Rule, and this Court declines to follow it, at least on these facts.[7]

Rembrandt therefore must demonstrate that JJVC or its attorneys knew or should have known that Dr. Bielawski's testimony was false. Rembrandt focuses on JJVC's attorneys and argues that they at least should have known that Dr. Bielawski was lying. (Doc. 345 at 21-22). According to Rembrandt, JJVC should have discovered Dr. Bielawski's dishonesty because another researcher was listed as the machine operator for one of the TOF-SIMS tests. (Doc. 345 at 22). JJVC also allegedly placed great weight on whether experts personally performed their experiments. (Doc. 345 at 21). This evidence is not sufficient to establish that JJVC should have known of Dr. Bielawski's misconduct. Indeed, Rembrandt also knew that another researcher was listed as the machine operator for one of the tests, thought that fact was important enough to mention at closing, (Doc. 300 at 197), and also did not discover Dr. Bielawski's misstatements until after trial.

Rembrandt also argues that JJVC should have known of Dr. Bielawski's dishonesty because he never submitted an invoice to JJVC's lawyers for his services. (Doc. 345 at 21). With the benefit of this type of hindsight, it is tempting to fault JJVC's lawyers for not discovering Dr. Bielawski's misconduct. However, he was apparently successful in convincing JJVC's lawyers that he knew the subject matter and that he was

---

[7] As did the Court in <u>Richardson</u>, this Court leaves open the possibility that non-party witness misconduct alone could give rise to Rule 60(b)(3) relief in an appropriate case. <u>Richardson</u>, 49 F.3d at 765.

going to give truthful testimony.[8] Rembrandt's evidence is unconvincing in demonstrating that JJVC's lawyers knew or should have known about Dr. Bielawski's false testimony. As neither JJVC nor its counsel has been shown to be complicit in any fraud or misconduct, Rembrandt is not entitled to relief under Rule 60(b)(3).

Were the Court to accept Rembrandt's interpretation that 60(b)(3) relief is available solely because of the expert's misconduct, even in the absence of complicity by JJVC or its counsel, Rembrandt would still not be entitled to a new trial because it was not prevented from fully and fairly presenting its case. What Rembrandt mainly lost here was an opportunity to discredit or eliminate an expert witness who, unlike in Harre, was not required for JJVC to win the case. When the trial is looked at in its totality, even accounting for Dr. Bielawski's misconduct, Rembrandt was not prevented from making its case. At bottom, Rule 60(b)(3) seeks to redress "judgments which were unfairly obtained . . . ." Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978). This was not such a case.[9]

## III.    Conclusion

The Seventh Circuit has put it aptly:

> A motion under Rule 60(b) often puts to a court a question
> without a right answer. The district judge must weigh
> incommensurables – the value of finality, the probability that

---

[8] Unlike in Harre, Rembrandt has presented no evidence that either JJVC or JJVC's attorneys had a preexisting relationship with Dr. Bielawski.

[9] This is true even without considering that JJVC was entitled to judgment as a matter of law because Rembrandt failed to present evidence on an essential element of its case. See supra Part I.

>  an error affected the outcome of the proceeding, the
>  probability that a second go-round would produce a 'better'
>  outcome, the costs of that second proceeding to the parties
>  (and ultimately to society as the finality of judgments is
>  undercut).

Metlyn, 763 F.2d at 831.

This is a close and difficult call. The Court recognizes that this decision could be interpreted as not taking seriously enough the integrity of this Court's proceedings and the importance of truthful witnesses. The Court could also be accused of treating misconduct by Rembrandt's expert witness more seriously than that of JJVC's.[10] While this criticism would be understandable, there are other important attributes to be considered and balanced - - finality, respect for the jury's verdict, and whether the ultimate result is just. I sat through the trial, heard all of the evidence, and have now conducted a lengthy hearing on the Rule 60 motion. I believe, notwithstanding the serious misconduct by Dr. Bielawski, this was a fair, though imperfect, trial. The jury's verdict is supported by the untainted evidence and should be allowed to stand.

Though the judgment should not be set aside, it remains that an expert witness for JJVC likely lied on the stand. Even if unwittingly, JJVC sponsored this false testimony and resisted initially when Rembrandt tried to expose Dr. Bielawski's untruthfulness. While denying Rule 60 relief, the Court will separately consider whether other actions vis-a-vis both Dr. Bielawski and JJVC should be undertaken.

Accordingly, it is hereby

---

[10] If the misconduct of Dr. Bielawski had come to light during trial, the Court surely would have taken remedial action.

11

**ORDERED**:

1. It is the Court's intention to deny Plaintiff's Motion to Set Aside the Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(2) and 60(b)(3) once the matters addressed in Paragraph 3 are finalized.

2. This Court will consider other possible courses of action, including whether to refer Dr. Bielawski's conduct to the United States Attorney's Office for possible criminal investigation for perjury or related crimes.[11]

3. JJVC has until **August 8, 2014** to show cause why it should not have to pay reasonable attorneys' fees and costs associated with Rembrandt's post-trial investigation of Dr. Bielawski and the motion practice occasioned thereby. Rembrandt will have until **August 25, 2014** to respond to JJVC's submission.

**DONE AND ORDERED** in Jacksonville, Florida this 10th day of July, 2014.

TIMOTHY J. CORRIGAN
United States District Judge

w.
Copies:
Counsel of record

_____

[11] Papers filed in connection with this motion suggest that Dr. Bielawski has already suffered significant professional consequences because of his actions in this case. (Doc. 389 at 1).

12